Donald J. LOOK, Petitioner, Appellant,

v.

Ronald AMARAL, et al., Respondents, Appellees.

No. 83–1276.

United States Court of Appeals, First Circuit.

Argued Oct. 3, 1983.

Decided Jan. 10, 1984.

Erwin N. Griswold, Washington, D.C., with whom Kenneth J. Ayres, Jones, Day, Reavis & Pogue, Washington, D.C., James B. Krasnoo and Norris, Kozodoy & Krasnoo, Boston, Mass., were on brief, for petitioner, appellant.

Linda G. Katz, Asst. Atty. Gen., Boston, Mass., with whom Francis X. Bellotti, Atty. Gen., Frederick W. Riley, Asst. Atty. Gen., Chief, Crim. Bureau, Barbara A.H. Smith, Asst. Atty. Gen., Chief, Crim. Appellate Div., Boston, Mass., were on brief, for respondents, appellees.

Before CAMPBELL, Chief Judge, GIBSON * and TIMBERS **, Senior Circuit Judges.

LEVIN H. CAMPBELL, Chief Judge.

Donald Look, petitioner-appellant, appeals from the denial of his application for habeas corpus. Convicted of second degree murder in the Massachusetts court, Look complains that he was denied his right to a speedy trial under the sixth and fourteenth amendments to the Constitution of the

---

* Of the Eighth Circuit, sitting by designation.

** Of the Second Circuit, sitting by designation.

United States. Look also contends that the state trial court's failure to instruct the jury on the lesser included offense of manslaughter violated his right to due process under the fourteenth amendment.

## I. FACTS

We state the facts only to the extent necessary to understand the issues before us.[1] On January 28, 1974, Look fatally injured his wife with a shotgun. While Look admits to this, he has consistently maintained that the shooting was an accident which occurred while he was cleaning a gun used for hunting. On May 29, 1974, after a probable cause hearing, he was indicted for murder in the first degree. Thereafter, until March of 1975, the Plymouth County Superior Court, entertained numerous pretrial motions made by both parties. On March 17, 1975, the court granted Look's motion to suppress certain statements made by his wife after the shooting, shortly before she died, tending to inculpate Look.[2] The Commonwealth applied to the Massachusetts Supreme Judicial Court on March 26, 1975 for an interlocutory appeal from the suppression order. On November 22, 1975, the Supreme Judicial Court dismissed the application for want of prosecution. The Commonwealth's failure to pursue this matter was part of a larger, continuing default from March 26, 1975 onward, for a period of some 31 months. During this period, the Commonwealth inexplicably did absolutely nothing in respect to Look's case. Finally, on November 2, 1977 it moved to vacate the dismissal of the interlocutory appeal. That motion was denied on November 22, 1977. During the 31-month hiatus, Look himself, who was represented by experienced counsel and was not incarcerated, neither moved to dismiss

the indictment, sought a trial, nor made any inquiry into the status of his case.

The Commonwealth finally came back to life on March 27, 1978, when it sought a trial assignment. Look responded on April 5, 1978 with a motion to dismiss for lack of a speedy trial, in which he asserted actual prejudice for the same reasons he now cites: inability to locate a defense witness, a Ms. Betty Roy; his own and other witnesses' diminished recollections; and his anxiety and concern during the more than four-year pretrial period. This motion was denied, and the trial commenced on October 19, 1978, more than 56 months after his arrest.

The trial judge instructed the jury on first and second degree murder, though not on involuntary manslaughter. Look was convicted of second degree murder and given a mandatory life sentence. Look took a timely appeal to the Massachusetts Supreme Judicial Court, in which he raised the speedy trial issue. His conviction was affirmed, 379 Mass. 893, 402 N.E.2d 470 (1980), and his petition for certiorari to the Supreme Court of the United States was denied. 449 U.S. 827, 101 S.Ct. 91, 66 L.Ed.2d 31 (1980). Thereafter Look filed the present application for habeas corpus in the district court, which denied relief, 546 F.Supp. 858.

## II. THE SPEEDY TRIAL ISSUE

Look's sixth amendment claim depends on principles outlined in *Barker v. Wingo,* 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972). Like each of the three courts that has previously considered this case, we must undertake to "balance" four factors, these being the length of the delay, the reason for the delay, the nature of the defendant's assertion of his right to a

1. The facts relevant to Look's speedy trial claim were described, first, in the state trial judge's ruling on Look's motion to dismiss for lack of a speedy trial; second (and very fully) in Justice Quirico's comprehensive opinion for the Massachusetts Supreme Judicial Court, *Commonwealth v. Look,* 379 Mass. 893, 402 N.E.2d 470 (1980); and, most recently, in the district court's memorandum dated April 1, 1983.

2. Suppression was granted on the ground, *inter alia,* that the statements were not dying declarations. We do not agree with Look that the Commonwealth acted with impropriety in calling these statements, which are part of the record, to our attention in connection with its argument that the taking of an interlocutory appeal was justified and that the time initially consumed for the appeal should not be counted against the Commonwealth.

speedy trial, and the prejudice caused to the defendant as a result of the delay. 407 U.S. at 530, 92 S.Ct. at 2191.

The length of the delay is both a "triggering mechanism" to determine whether balancing should occur, and a factor to be weighed when such is the case. Here the Commonwealth concedes the length of the delay went well beyond any threshold of "presumptive prejudice" needed to trigger the balancing.

There is also no doubt the delay was so lengthy that, as Justice Quirico wrote for the Supreme Judicial Court, it "is clearly to be weighed against the Commonwealth, absent an adequate explanation . . . ." *Commonwealth v. Look,* 379 Mass. 893, 898, 402 N.E.2d 470, 475 (1980). The length of the period from arrest to trial—nearly five years—was not much shorter than that in *Barker,* which the Court termed "extraordinary." 407 U.S. at 533, 92 S.Ct. at 2193. As in *Barker,* only a rather small portion of that period can be attributed to "a strong excuse," such as the Commonwealth's application to appeal the suppression order. 407 U.S. at 534, 92 S.Ct. at 2194. At the very least, virtually three of the five years are totally without excuse, as the Commonwealth concedes.

Indeed, no glimmer of a reason for the core delay has even been presented. The Commonwealth suggests, in argument, that it simply forgot about the case. The state trial judge ascribed the delay to "negligence" but not to deliberate misconduct. In *Barker,* the Supreme Court characterized negligence as a "more neutral reason" for delay, that "should be weighted less heavily" against the government than a deliberate delay to gain advantage or "hamper the defense," but nevertheless one that should be counted against it because "the ultimate responsibility for such circumstances must rest with the government rather than with the defendant." *Barker,* 407 U.S. at 531, 92 S.Ct. at 2192. *See also Isaac v. Perrin,* 659 F.2d 279, 282 (1st Cir.1981). Here there is nothing to suggest bad faith on the prosecutor's part—indeed, it is hard to see how a rational prosecutor could have imagined that the delay in question would have helped his case. We think the district court, like the two state courts before it, did not err in classifying the delay as one due to negligence. We accordingly weigh the reason against the Commonwealth, although "less heavily" than were it to have been deliberate.

The third factor is the extent to which the defendant asserted his right to a speedy trial. In *Barker,* the Supreme Court rejected the concept that a defendant's failure to demand a trial amounts to a waiver of his sixth amendment speedy trial right. 407 U.S. at 523–28, 92 S.Ct. at 2188–91. The Court went on to say, however, that "[t]his does not mean . . . that the defendant has no responsibility to assert his right. . . . [T]he defendant's assertion of or failure to assert his right to a speedy trial is one of the factors to be considered in an inquiry into the deprivation of the right." 407 U.S. at 528, 92 S.Ct. at 2191. That this factor, while not conclusive, remains important, appears from the Court's two-sentence conclusion to its paragraph discussing assertion of the right:

> The defendant's assertion of his speedy trial right, then, is entitled to strong evidentiary weight in determining whether the defendant is being deprived of the right. *We emphasize that failure to assert the right will make it difficult for a defendant to prove that he was denied a speedy trial.*

407 U.S. 531–32, 92 S.Ct. at 2192–93 (emphasis supplied).

Here Look remained silent throughout the Commonwealth's long delay. He made no inquiry as to the status of his case, nor did he move for dismissal or trial, apparently " 'gambling' that the Commonwealth had forgotten about him or decided not to pursue his case." *Commonwealth v. Look,* 379 Mass. at 900, 402 N.E.2d at 476–77 (1980). While "[a] defendant has no duty to bring himself to trial," 407 U.S. at 527, 92 S.Ct. at 2190, he does have "some responsibility to assert a speedy trial claim." *Id.* at 529, 92 S.Ct. at 2191. In a situation such as this, where the Commonwealth seemingly "for-

got" about the case, some inquiry by Look as to the status of the action against him might easily have remedied the situation. There is nothing to suggest that Look—who was at all times ably represented—failed to seek a speedy trial because of ignorance of his constitutional right to a speedy trial[3] or because of helplessness. *See* 407 U.S. at 529, 92 S.Ct. at 2191. Throughout the time before trial Look was at liberty. The circumstances strongly suggest, as the Massachusetts Supreme Judicial Court noted, that he gambled with his right, hoping—understandably perhaps—that either his case would be overlooked or that, unreminded, the Commonwealth's delay would ripen into a period that would improve his chances for acquittal on sixth amendment grounds.

The final factor to be considered under *Barker v. Wingo* is potential prejudice to the defendant. Look asserts three grounds of prejudice: the unavailability of a potential defense witness, the failure of memory of all witnesses, and Look's personal anxiety caused by the existence of outstanding charges against him.

In *Barker,* the Supreme Court noted that prejudice to a defendant's ability to conduct a defense is the most serious type of prejudice. Unavailability of a witness and failure of memories could undoubtedly result in such prejudice in some cases. Though this is true, the particular circumstances of each case must be examined to see if any actual prejudice resulted.

The unavailable witness, Betty Roy, was alleged to have been a good friend of the Looks and to have visited them in 1972 and briefly in November 1973. As the Supreme Judicial Court said, "Ms. Roy did not observe any of the factors or circumstances directly surrounding the alleged shooting," *Commonwealth v. Look,* 379 Mass. 893, 901,

402 N.E.2d 470, 477 (1980). At best she could have testified that the Looks had a happy and harmonious married life and that Donald thus had no motive to murder his wife. There was, however, substantial testimony from other witnesses to this effect. We see nothing in Ms. Roy's testimony which was other than cumulative, and cumulative on a point (generalized impressions concerning the quality of the Look's marriage some time before the shooting) which was secondary, given evidence concerning their relationship much closer to the tragedy. We therefore find little prejudice resulting from her absence. Further, the record reveals that Look was aware of Ms. Roy's peripatetic tendencies; if she had in fact been considered a crucial witness, Look could have made some effort to keep track of her and possibly take her deposition.[4]

Look's other concern over failed memories centers on some investigating officers' inability to remember facts concerning the presence and location of cleaning materials and the rusted condition of the shotgun. We have examined the record, and to the extent that these matters and others relating to memory are relevant, the jury had ample photographic evidence and other testimony. There was strong evidence of the presence of oil on the gun and oil and cleaning implements on the table after the shooting. Indeed, the Commonwealth did not deny the presence of the cleaning materials. The prejudice resulting, if any, from failed memories on these matters was trivial.

Look also claims as prejudice his anxiety and concern over the outstanding charges against him. In *United States v. MacDonald,* 456 U.S. 1, 102 S.Ct. 1497, 71 L.Ed.2d 696 (1982), the Court identified three core

---

**3.** The docket entries reveal that Look's attorney filed numerous pretrial motions, leading up to the successful motion in limine that caused the trial court to suppress highly damaging remarks by Look's wife made just before she died. After the Commonwealth's period of forgetfulness, when it again took up his case, Look's same attorney quickly moved to dismiss on speedy trial grounds.

**4.** A private investigator did, in fact, interview her in 1974, after the shooting. He turned her statement over to Look's counsel who objected to the prosecution's looking at it when the latter sought to do so at a hearing in 1978.

concerns that the right to a speedy trial is designed to protect against:

> The speedy trial guarantee is designed to minimize the possibility of lengthy incarceration prior to trial, to reduce the lesser, but nevertheless substantial, impairment of liberty imposed on an accused while released on bail, and to shorten the disruption of life caused by arrest and the presence of unresolved criminal charges.

*Id.* at 8, 102 S.Ct. at 1502. Look was clearly subjected to the last of these, although he was not incarcerated and, if subject to bail at all, has never argued that the bail seriously interfered with his liberty or drained his financial resources. *See MacDonald,* 456 U.S. at 8, 102 S.Ct. at 1502.[5] We weigh any prejudice due to anxiety less heavily than we would weigh a greater imposition on liberty such as incarceration.

The balancing of the appropriate factors identified above is more judicial art than science; no calculus exists to tell this court with precision the weights to assign the various factors, nor is it likely that such a calculus could be devised. On these facts, the two most salient features are the Commonwealth's negligent 31-month silence and the silence of Look. In *United States v. Johnson,* 579 F.2d 122, 124 (1st Cir.1978), we stated that "[a] nonassertion of this right prior to trial indicates that the defendant may in fact have believed that the delay was to his benefit, in which case he should not be heard to complain at a later date that his right to a speedy trial has been violated." The defendant's assertion of his right to a speedy trial, or at least some inquiry as to the status of the case against him, is important because the presence of prejudice is not always readily apparent. After all, some defendants may rationally prefer to remain at liberty as long as possible rather than take part in a trial which they suspect will lead to incarceration. *Some* assertion or inquiry by the defendant serves as an indication that, from the de-

fendant's perspective, a trial is desirable. Defendants should not be encouraged to sit idly by hoping that a speedy trial challenge will mature or that some other advantage will accrue to their benefit.

Against these concerns is balanced a 31-month delay caused by negligence sandwiched in the middle of a total delay of 56 months. While the issue is close, we believe the complete silence on Look's part outweighs the negligent delay of the Commonwealth, and that the other factors in Look's favor are insufficient to tip the scales back. At least in the circumstances here—the defendant being at liberty and without complaint—anxiety over the existence of the unresolved charges seems the least compelling of the core concerns of the sixth amendment. Here there was lacking the simplest and most obvious manifestation of anxiety one seeking speedy resolution of charges might be expected to show—some inquiry into the status of the case, or some suggestion that a trial was wanted, the sooner the better. The lack of significant prejudice to Look's defense by reason of the passage of time, coupled with Look's failure to inquire into the status of the case, weigh more heavily than the length of the negligent delay and any anxiety experienced by Look. In so saying, we do not, as appellant argues, reintroduce the demand-waiver doctrine by the back door. Had Look's ability to defend himself been more heavily prejudiced, had the state acted in bad faith, or had Look been subjected to greater pretrial infringement of his liberty, one or more of these factors might well have outweighed Look's failure to speak out. But in the present circumstances, we do not think Look is entitled to prevail.

## III. THE LESSER INCLUDED OFFENSE ISSUE

■ While it is true that no instruction was given regarding lesser included of-

---

**5.** At oral argument, the bench asked Look's counsel whether Look had been incarcerated prior to trial and counsel answered that he had been free on bail. Counsel for the Commonwealth stated at oral argument that Look had never been required to post bail. In any event, Look asserts as prejudice only his anxiety and concern, and not any further imposition on liberty such as a burdensome bail.

fenses, this was due to the acquiescence of Look's counsel who said to the court, "I would be willing to state on the record, your Honor, that this case could go to the jury on the question of murder only." Look argues that the subsequent case of *Beck v. Alabama,* 447 U.S. 625, 100 S.Ct. 2382, 65 L.Ed.2d 392 (1980), reveals a constitutional right to a lesser included offense instruction on the facts of this case. We disagree. At issue in *Beck* was an Alabama statute which specifically prohibited a judge from giving the jury the option of convicting a defendant of a lesser included offense in capital cases. In this case no statute prevented the judge from giving a lesser included offense instruction, and there is nothing to indicate that the judge would have refused to give such an instruction if defendant had wanted. In *Beck* the Supreme Court merely held that Alabama could not constitutionally prevent a judge from charging a jury concerning a lesser included offense; *Beck* does not prevent a defendant from foregoing that option for himself as Look did in this case. Defense counsel may well have felt that, on the evidence, the jury would be more likely to convict on manslaughter than to acquit, but if given a choice only between a murder conviction and acquittal that an acquittal was more likely. Nothing in *Beck* or elsewhere prevents a defendant from making such a strategic choice. Having gambled and lost Look may not now complain.

*Denial of petitioner's application for habeas corpus is affirmed.*