**UNITED STATES**

**v.**

**William T. MARLER.**

**Crim. No. 83–292–N.**

United States District Court,
D. Massachusetts.

April 11, 1984.

Collora, Michael Hemenway & Barnes, Boston, Mass., for defendant.

C. Brian McDonald, S. Theodore Merritt, Criminal Section, Civil Rights Division, U.S. Dept. of Justice, U.S. Attys., Washington, D.C., for plaintiff.

## MEMORANDUM AND ORDER ON MOTION TO DISMISS FOR PRE–INDICTMENT DELAY

DAVID S. NELSON, District Judge.

William Marler, the defendant here, is a former Lynn, Massachusetts police officer charged under 18 U.S.C. § 242 with violating the civil rights of another, with death resulting. Pointing to the fifty-month interval between the complained-of incident and his federal indictment, he moves to dismiss the indictment for violation of his sixth amendment right to a speedy trial and his fifth amendment right to due process. This court, following a hearing, orally denied defendant's motion at the commencement of trial and now presents this memorandum in support of that decision.

The defendant, while off-duty during the afternoon of September 12, 1979, is alleged to have accosted two individuals named Lawrence Brown and Richard Anderson in connection with a reported theft and to have pushed them both into the Lynn Harbor, resulting in Brown's death. He was indicted by the Commonwealth of Massa-chusetts on September 24, 1979 for manslaughter and for two counts of assault and battery. At a state court trial in December 1979, he was acquitted of the former charge but convicted of the latter two. These convictions were reversed on appeal, but a second trial in September 1981 again resulted in convictions on the assault-and-battery charges. On November 3, 1983, over four years after the incident occurred, the present federal indictment was returned charging the defendant with willfully violating Brown's right not to be deprived of liberty without due process of law.

The federal government did not participate in the initial investigation into the events culminating in Brown's death, nor was it involved in defendant's arrest. It first learned of the incident through receipt of a complaint by the FBI in January 1980, subsequent to the first trial. Aside from receiving the transcript of that trial, the United States thereafter engaged in no independent investigation for over two and one-half years. Not until August 1982, almost one year after the close of the second trial, did it first request evidence from the Commonwealth. And the grand jury did not commence hearing evidence until July 1983, returning the present indictment in November of that year. In explaining this chronology, the United States indicated that it observed a "dual prosecution" policy, under which it would refrain in appropriate cases from instituting prosecution while a similar state prosecution was ongoing. The decision to launch a subsequent federal prosecution would depend upon the outcome of the state proceeding and would reflect such criteria as whether substantial federal interests remained unvindicated, whether a federal conviction was likely, and, where a conviction had been obtained in state court, whether an enhanced federal sentence was anticipated. Although the United States never explicitly acknowledged as much, the court infers that the present prosecution was prompted by the government's dissatisfaction with defendant's convictions (two counts of assault and

battery) and sentence (three years, suspended) in state court.

■ The sixth amendment's speedy trial guarantee and the fifth amendment's due process clause both provide safeguards against unreasonable prosecutorial delay. The two provisions are aimed, however, at different stages of the pretrial process. Any allegation of undue delay prior to a formal criminal charge being instituted "must be scrutinized under the Due Process Clause, not the Speedy Trial Clause." *United States v. MacDonald,* 456 U.S. 1, 7, 102 S.Ct. 1497, 1501, 71 L.Ed.2d 696 (1982). The speedy trial right is implicated only when a criminal prosecution formally commences by a defendant being "indicted, arrested, or otherwise officially accused." *Id.* at 6, 102 S.Ct. at 1501; *accord, e.g., United States v. Lovasco,* 431 U.S. 783, 788–89, 97 S.Ct. 2044, 2047–48, 52 L.Ed.2d 752 (1977); *United States v. Marion,* 404 U.S. 307, 313, 320–21, 92 S.Ct. 455, 459, 463–64, 30 L.Ed.2d 468 (1972). The two provisions also differ in the level of scrutiny provided. To establish a due process violation on account of preaccusation delay, a defendant first must carry the "heavy burden" of proving "actual prejudice" to his rights to a fair trial resulting from the delay. *United States v. Capone,* 683 F.2d 582, 589 (1st Cir.1982). In addition, he must demonstrate that the government acted in bad faith, *United States v. Ciampaglia,* 628 F.2d 632, 639 (1st Cir.), *cert. denied,* 449 U.S. 956, 101 S.Ct. 365, 66 L.Ed.2d 221 (1982)—by proving, for example, that the government caused the delay either "as an intentional device to gain tactical advantage over the accused," *United States v. Marion,* 404 U.S. at 324, 92 S.Ct. at 465, or "in reckless disregard of circumstances, known to the prosecution, suggesting that there existed an appreciable risk that delay would impair the ability to mount an effective defense." *United States v. Lovasco,* 431 U.S. at 795 n. 17, 97 S.Ct. at 2051 n. 17. A defendant's burden under the sixth amendment is considerably less severe. The speedy trial inquiry entails an *ad hoc* examination of four factors: length of delay, reason for delay, the defendant's assertion of his right, and preju-

dice to the defendant, *Barker v. Wingo,* 407 U.S. 514, 530, 92 S.Ct. 2182, 2191, 33 L.Ed.2d 101 (1972); *Look v. Amaral,* 725 F.2d 4, 5–6 (1st Cir.1984)—none of which is "either a necessary or sufficient condition to the finding of a deprivation of the right of speedy trial." *Barker v. Wingo,* 407 U.S. at 533, 92 S.Ct. at 2193.

■ The defendant here is challenging, not any delay between his federal indictment and trial, but rather the almost fifty-month lapse of time between the incident and that indictment. He nonetheless contends that the speedy trial provision rather than the due process clause must govern the analysis. Because the state and federal prosecutions arose from the same incident and charged substantially the same offense, he argues, his sixth amendment right was triggered at the time of his state indictment in 1979. The case law, however, has rejected any such exception to the general principles described above in circumstances such as those presented here.

The decision in *United States v. Cabral,* 475 F.2d 715 (1st Cir.1973), upon which defendant places principal reliance, at first glance provides some support for his position. The appellant there was arrested, but never prosecuted, by state authorities for possession of a sawed-off shotgun. Fifteen months later, the federal government indicted him for the same offense. In determining when the sixth amendment became applicable, the First Circuit stated: "The [federal] government's prosecution of this charge was initiated only three days [after his state arrest when] ... state authorities turned over this weapon to a federal officer. Under these circumstances, ... it is clear that appellant's right to a speedy trial crystallized at the time of his initial [state] arrest." *Id.* at 718. Defendant attempts to distill from this holding the general proposition that a state arrest or indictment will trigger the sixth amendment for the purposes of a subsequent federal prosecution for substantially the same offense. Yet this attempt falters on two grounds. First, defendant's interpretation of the case appears misplaced. In

*United States v. Mejias*, 552 F.2d 435 (2d Cir.), *cert. denied*, 434 U.S. 847, 98 S.Ct. 154, 54 L.Ed.2d 115 (1977), the court rejected just such a reading of *Cabral* by noting: "the bas[is] for the attachment of Sixth Amendment speedy trial rights [was] not the prior state arrest ..., but rather [an act] which occurred virtually contemporaneously with the arrest ...—the turnover to the federal government by the state of the evidence which supported the federal charges...." *Id.* at 442.[1] More important, the broader doctrine advanced by defendant—even if a proper construction of *Cabral*—has been rejected in a subsequent Supreme Court case. In *MacDonald*, in the course of examining the sixth amendment's applicability to two successive federal prosecutions, the Court added: "Of course, an arrest or indictment by one sovereign would not cause the speedy trial guarantees to become engaged as to possible subsequent indictments by another sovereign." 456 U.S. at 10 n. 11, 102 S.Ct. at 1503 n. 11. Subsequent cases have relied upon this dictum to dismiss the proposition advanced by defendant here. *E.g., United States v. Singer*, 687 F.2d 1135, 1142–43 n. 14 (8th Cir.1982), *rev'd on other grounds en banc*, 710 F.2d 431 (8th Cir.1983).[2] This approach to the sixth amendment, it might be added, comports with that adopted with respect to the speedy trial statute. *See, e.g., United States v. Carlson*, 697 F.2d 231, 235 (8th Cir.1983), and cases there cited.

Finally, it should be noted that—to the extent it remains viable in the wake of *MacDonald*—the narrower *Cabral* doctrine as clarified in *Mejias* is of no avail to defendant. Unlike in *Cabral*, the federal government in the present case received no evidence from the state at or near the time of defendant's initial arrest. And unlike in *Mejias* and *United States v. Lai Ming Tanu*, 589 F.2d 82 (2d Cir.1978)—two pre-*MacDonald* cases that hesitated to reject outright the proposition advanced by defendant, *see* note 1 *supra*—there was here no joint federal-state investigation, no cooperation concerning respective prosecutorial responsibilities and strategies, and no close federal monitoring of the state prosecutions. Rather, as noted above, the federal government did not even learn of this case until after the initial state trial. Consequently, under any reading of *Cabral*, there is no factual basis for holding the federal government to the date of defendant's state indictment for purposes of the sixth amendment. For these reasons, the court considers the speedy trial guarantee inapplicable to defendant's claim.

The defendant's alternative claim under the due process clause can be dismissed without extensive discussion. This provision has only a "limited role to play in protecting against oppressive delay," *United States v. Lovasco*, 431 U.S. at 789, 97 S.Ct. at 2048, for the principal reason that "the applicable statute of limitations ... is ... the primary guarantee against bringing overly stale criminal charges." *United States v. Ewell*, 383 U.S. 116, 122, 86 S.Ct. 773, 777, 15 L.Ed.2d 627 (1966), *quoted in United States v. Marion*, 404 U.S. at 322, 92 S.Ct. at 464. Consequently, as discussed above, the due process claimant's burden is a "heavy" one, *United States v. Capone*, 683 F.2d at 589, requiring a showing both of substantial actual prejudice resulting from the delay and bad faith on the part of the government. *E.g., United States v. Lovasco*, 431 U.S. at 790, 97 S.Ct. at 2048; *United States v. Marion*, 404 U.S.

---

**1.** It is interesting to note that the *Mejias* court seemingly ruled, in an alternative holding, that the sixth amendment should not be applied continuously to successive state and federal prosecutions for the same offense. 552 F.2d at 442, *aff'g* 417 F.Supp. 585, 592–93 (S.D.N.Y.1976). In the subsequent case of *United States v. Lai Ming Tanu*, 589 F.2d 82 (2d Cir.1978), however, the Second Circuit stated that this issue had not been decided in *Mejias* and explicitly left it unresolved. *Id.* at 88–89. Each of these cases upheld a federal narcotics prosecution that was initiated when an earlier state prosecution for the same offense was derailed—in *Mejias* because of a state court's allowance of a suppression motion and in *Lai Ming Tanu* because of a state court dismissal on speedy trial grounds.

**2.** Both the majority and the dissenting opinions in the *en banc Singer* decision adopted the panel opinion's treatment of the speedy trial issue. 710 F.2d at 432 (majority); *id.* at 438 (dissent).

at 324, 92 S.Ct. at 465. Defendant's proof falls short on both accounts.

■ The defendant alleges that the preindictment delay has prejudiced his ability to mount an effective defense in two respects: first, because a material witness has become incompetent, and, second, because the scene of the incident has been destroyed. The alleged material witness is Richard Anderson, Brown's companion who was allegedly pushed into the harbor by defendant. However, the defendant failed to produce Mr. Anderson at the hearing on the present motion, and the court is accordingly unable to evaluate his ability to testify.[3] More important, the court's review of the state court transcripts belies defendant's contention that Anderson would have offered exculpatory evidence. Mr. Anderson, an alcoholic, was permitted to testify at the first trial even though the court psychiatrist deemed him incompetent. That testimony, in this court's view, was so self-contradictory and incoherent as to have been devoid of any probative value. Indeed, Anderson was not called as a witness by either side at the retrial. Second, the defendant contends that the loss of the physical setting will deny the jury an opportunity to conduct a view—an opportunity afforded at both state trials—and will undermine his ability to impeach the testimony of eye-witnesses. However, not only is the granting of a jury view a matter of discretion, *see, e.g., United States v. Bryant*, 563 F.2d 1227, 1230 (5th Cir.), *cert. denied*, 435 U.S. 972, 98 S.Ct. 1616, 56 L.Ed.2d 65 (1977), but the government's collection of schematic drawings and both on-site and aerial photographs, in conjunction with the testimony of eye-witnesses, should suffice to familiarize the jury adequately with the physical setting. The court finds no substantial prejudice to defendant stemming from the pre-indictment delay.

■ In any event, the defendant has failed to show that the government purposely delayed his indictment out of some bad-faith motivation such as gaining a "tactical advantage" over him. *United States v. Marion*, 404 U.S. at 324, 92 S.Ct. at 465. All of the available evidence indicates that the decision to initiate the federal prosecution was prompted by the government's dissatisfaction with the outcome of the state prosecution—particularly the three-year, suspended sentence imposed on defendant. Far from reflecting any bad faith, such initial deference to a state prosecution followed by federal action, commenced in response to a perceived lack of success in state court, represents a permissible, indeed laudatory, approach to law enforcement in a time of limited resources and manpower. *See, e.g., United States v. Mejias*, 552 F.2d at 441. It is true that the government, if in fact concerned solely with the length of defendant's state sentence, had little if any reason to await the outcome of his appeal and second trial; only in unusual circumstances could an enhanced sentence have been imposed on retrial. *See, e.g., North Carolina v. Pearce*, 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969); *McHoul v. Commonwealth*, 365 Mass. 465, 312 N.E.2d 539 (1974). Yet any such oversight on the part of the government would fall far short of the bad faith or recklessness necessary to establish a violation of due process, particularly given the absence of resulting prejudice.

For the foregoing reasons, defendant's motion to dismiss the indictment on account of pre-indictment delay is DENIED.

SO ORDERED.

---

**3.** Given that this opinion was prepared subsequent to trial, it should perhaps be noted that Mr. Anderson's incompetence to testify was not disputed at the trial and that neither side called him to the stand.