UNITED STATES of America,
Plaintiff,

v.

[1] Lorenzo Muñoz FRANCO, [2] Francisco Sanchez Aran, [3] Ariel Gutierrez Rodriguez, [4] Wilfredo Umpierre Hernandez, [5] Enrique Gutierrez Rodriguez, [6] Rafael Dominguez Wolff, Defendants.

No. CRIM. 95–0386(DRD).

United States District Court,
D. Puerto Rico.

Aug. 28, 2000.

Maria Dominguez–Victoriano, U.S. Attorney's Office District of P.R., Civil Division, Hato Rey, PR, Desiree Laborde–

Sanfiorenzo, Jorge E. Vega–Pacheco, U.S. Attorney's Office, Criminal Division, San Juan, PR, Edna C. Rosario–Munoz, U.S. Attorney's Office District of P.R., Civil Division, Hato Rey, PR, for plaintiff.

Harry Anduze–Montano, San Juan, PR, Jorge L. Arroyo–Alejandro, San Juan, PR, Graham A. Castillo–Pagan, Hato Rey, PR, Francisco M. Dolz–Sanchez, San Juan, PR, Ramon Garcia–Garcia, Santurce, PR, Andres Guillemard–Noble, Nachman, Guillemard & Rebollo, San Juan, PR, Joseph C. Laws, Federal Public Defender Office, San Juan, PR, Michael S. Pasano, Zuckerman Spaeder Taylor & Evans, Miami, FL, Domingo A. Quiles–Rosado, Edificio Bolivia, Hato Rey, PR, Ricardo L. Rodriguez–Padilla, San Juan, PR, David W. Roman, Edif El Caribe, San Juan, PR, Joseph J. Rucci, Rucci, Burnham, Carta and Edelberg LLP, Darien, CT, Maria H. Sandoval, Santurce, PR, for defendants.

Kevin G. Little, David Efron Law Offices, Rio Piedras, PR, for intervenor-plaintiff.

Alberto J. Perez–Hernandez, Law Offices David Efron, Rio Piedras, PR, for movant.

**1.** The Gutiérrez Defendants filed Objections (Docket No. 528), which Umpierre joined (Docket No. 540), to the MRR. In addition, co-defendant, Francisco Sánchez Arán ("Sánchez"), joined both motions to dismiss, *see* (Docket Nos. 475, 502), as well as, the objections to the MRR. *See* (Docket Nos. 538, 566); *see also* (Docket No. 482). Lorenzo Muñoz Franco ("Muñoz") also entered the fray. (Docket No. 612).

**2.** First, the MRR thoroughly addressed and correctly denied Defendants' motions to dismiss for pre-accusation delay. (Docket No. 507). Subsequently, the Court adopted the MRR, specifically with regard to the Fifth Amendment and FED. R. CRIM. P. 48(b), because Defendants had not timely objected to the MRR. (Docket No. 579). The Court shall not disturb that ruling. Furthermore, the Gutiérrez Defendants specifically limited their request for reconsideration, the subject of this Order, to the issue of speedy trial. (Docket No. 580, p. 8 n. 2). Moreover, the scope of the evidentiary hearing was restrict-

## ORDER

DOMINGUEZ, District Judge.

Pending before the Court is a motion for reconsideration (Docket No. 580) of an Opinion and Order (Docket No. 579), wherein the Court adopted the Magistrate's Report and Recommendation ("MRR") (Docket No. 507) of United States Magistrate Judge Justo Arenas recommending the denial of co-defendants', Ariel and Enrique Gutiérrez Rodríguez ("Gutiérrez Defendants"), Motion To Dismiss The Indictment For Prejudicial Pretrial Delay (Docket No. 472), as well as, the denial of co-defendant's, Wilfredo Umpierre Hernández ("Umpierre"), mirror-image motion to dismiss due to prejudicial pre-trial delay (Docket No. 474).[1] An avalanche of docket entries have been filed regarding this issue.

The focus of this order is on the issue of pre-trial delay.[2] Although a violation of the Speedy Trial Act has not been found, a challenge under the Sixth Amendment for lack of a speedy trial may be unusual but not precluded. *See United States v. Salimonu,* 182 F.3d 63, 69 (1st Cir.1999); *United States v. Muñoz–Amado,* 182 F.3d

ed to the issue of pre-trial delay. (Docket Nos. 587, 597, 619, 620, 628); (Docket No. 602) ("The only issue to be discussed at said hearing will be defendants' Motion for Reconsideration re: Speedy Trial violation (Dkt. No. 580). "); *see also* (Docket Nos. 590, 595, 616); *but see* (Docket No. 612 & 614). Notwithstanding, the Court is convinced upon review of the record the MRR was indeed correct and the Defendants, who asserted a claim of unconstitutional pre-indictment delay, have not carried their "heavy burden of showing not only that the pre-indictment delay caused [them] actual, substantial prejudice, but also that the prosecution orchestrated the delay to gain a tactical advantage over [them]." *United States v. Stokes,* 124 F.3d 39, 47 (1st Cir. 1997) (citing *United States v. Marion,* 404 U.S. 307, 324, 92 S.Ct. 455, 465, 30 L.Ed.2d 468 (1971); *see United States v. Lovasco,* 431 U.S. 783, 788–797, 97 S.Ct. 2044, 2048–2052, 52 L.Ed.2d 752 (1977); *United States v. Henson,* 945 F.2d 430, 439 (1st Cir.1991)); *United States v. Marler,* 756 F.2d 206, 213–215 (1st Cir.1985).

57, 61 (1st Cir.1999); *United States v. Santiago–Becerril*, 130 F.3d 11, 21 (1st Cir.1997). The Court resketches the legal groundwork for the examination of Sixth Amendment violations.

■■■ The Sixth Amendment guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial ..." U.S. CONST. amend. VI. "This right attaches upon arrest or indictment, whichever occurs first." *United States v. Muñoz–Amado*, 182 F.3d at 61 (citing *United States v. MacDonald*, 456 U.S. 1, 6–7, 102 S.Ct. 1497, 71 L.Ed.2d 696 (1982); *United States v. Mala*, 7 F.3d 1058, 1061 (1st Cir.1993); *United States v. Colombo*, 852 F.2d 19, 23 (1st Cir.1988)); *see United States v. Marion*, 404 U.S. 307, 325, 92 S.Ct. 455, 466, 30 L.Ed.2d 468 (1971). "The Supreme Court has said that 'the lower courts have generally found postaccusation delay "presumptively prejudice" at least as it approaches one year,' " thereby tripping the triggering mechanism for a *Barker* inquiry. *Id.* (quoting *Doggett v. United States*, 505 U.S. 647, 652 n. 1, 112 S.Ct. 2686, 120 L.Ed.2d 520 (1992)); *see also Barker v. Wingo*, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972). Undeniably, the length of the postaccusation delay for all defendants (i.e., a minimum of over three years as discussed below) in this case is "presumptively prejudicial" surpassing the threshold for initiating a *Barker* inquiry. *See id.* ("We shall assume, ..., that the nineteen month delay in this case was 'presumptively prejudice' so as to trigger further inquiry." (citing *United States v. Santiago–Becerril*, 130 F.3d at 21 (assuming that a fifteen month delay was presumptively prejudicial so as to trigger further inquiry); *United States v. Colombo*, 852 F.2d at 24 (holding that a twenty-four month delay was long enough to be presumptively prejudicial)). Pursuant to the Supreme Court's pronouncement in *Barker*, the Court must undertake a balancing test considering the following four factors: "[ (1) ] Length of delay, [ (2) ] the reason for the delay, [ (3) ] the defendant's assertion of his right, and [ (4) ] prejudice to the defendant." *Barker v. Wingo*, 407 U.S. at 530, 92 S.Ct. at 2192. The Court shall address the factors *seriatim*.

### I. FOUR BARKER V. WINGO FACTORS

**FACTOR ONE: LENGTH OF DELAY**

The length of delay for speedy trial purposes commences upon indictment or arrest. *See Doggett v. United States*, 505 U.S. at 655, 112 S.Ct. at 2692; *United States v. Marion*, 404 U.S. at 325, 92 S.Ct. at 466; *United States v. Muñoz–Amado*, 182 F.3d at 61. Indictments have been pending against defendants, Lorenzo Muñoz Franco, Francisco Sanchez Aran, Ariel Gutierrez Rodriguez, Wilfredo Umpierre Hernandez, for four years and eight months (Docket No. 2) (November 22, 1995) and against defendant, Enrique Gutierrez Rodriguez, for three years and almost five months (Docket No. 109) (March 5, 1997).[3] The prejudice emanating from the lengthy delays from indictments to trial will necessarily be weighed in the four factor balancing test to follow. *See Doggett v. United States*, 505 U.S. at 652, 112 S.Ct. at 2691.

**FACTOR TWO: REASONS FOR THE DELAY**

As stated in the previous Order, the reasons for the lengthy delay in this case are various. Many of the dilatory sources spring directly from the actions of the defendants. A review of the history of this case is warranted. The following is a non-exhaustive summary of the events which have contributed to the delay in this case.

November 22, 1995 was the date of the first indictment in this case. Less than three weeks later the first delay directly

---

**3.** Defendant, Rafael Domínguez Wolff, passed away, *see* (Docket No. 517) and was dismissed from the case. *See* (Docket Nos. 573 & 594).

attributable to one of the Gutiérrez Defendants occurred. On December 12, 1995, Ariel Gutiérrez moved for a 30 day extension of the time in which to file pre-trial motions. (Docket No. 38). On January 4, 1996, co-defendant Lorenzo Muñoz Franco requested the scheduling of a status conference specifically to request an extension of the discovery time given the complex nature of, and volume of the documentary evidence involved in, this case. *See* (Docket No. 40). On January 18, 1996, co-defendant Francisco Sánchez Arán filed a motion requesting the tolling of the Speedy Trial Act "given the massive amounts of discovery announced by the government and the complexity of the charges alleged in the indictment." (Docket No. 43). Clearly, from the outset the defendants expected an unusually long time-consuming trial preparation.

In response to Muñoz Franco's request for an extension of the discovery time, a status conference was set for January 29, 1996. On January 25, 1996, Ariel Gutiérrez requested a continuance of that conference. (Docket No. 45). The immediate result of that status conference was an order mandating that the government index its documentary evidence with particularity by March 15, 1996. (Docket No. 49). It was further ordered by the magistrate judge that a second discovery conference would be held on April 8, 1996 and that a scheduling order would then issue. *Id.* All parties were in accord with this result. As a consequence of the on-going discovery, the original trial date of February 13, 1996 was vacated. (Docket No. 51).

At the April 8, 1996 discovery conference the government was granted until April 29, 1996 to complete the designation of its evidence with particularity. (Docket No. 62). Thereafter, the defendants were given until May 17, 1996 to inspect and copy the materials designated pursuant to FED. R. CRIM. P. 12. *Id.* The defendants were further ordered to file a comprehensive motion pursuant to FED. R. CRIM. P. 16 by July 31, 1996. *Id.* A

hearing on the Rule 16 motion was scheduled for August 15, 1996. *Id.* September 16, 1996 was set aside as the date to resolve any further discovery disputes. *Id.*

On May 23, 1996, co-defendant Ariel Gutiérrez filed a motion requesting a status conference pursuant to FED. R. CRIM. P. 16. (Docket No. 73). In that motion Ariel Gutiérrez concedes that the speedy trial requirements were then being tolled. *Id.* at 4. ("Defendants understand that it [the requirements of a speedy trial] is presently tolled by virtue of the problems associated with document discovery [in this complex white collar criminal case].") In that same motion Gutiérrez bluntly states, "[d]efendants [in this case] need adequate time to prepare . . . ." *Id.* As a result of that motion a status conference was set for July 3, 1996. (Docket No. 74). The gist of the status conference was that the dates established by the magistrate were vacated, and the government was granted until July 31, 1996 to complete delivery of the Rule 12 documents and until October 15, 1996 to complete delivery of the Rule 16 materials. (Docket No. 77). February 10, 1997 was designated as the date wherein the court would hear any motions relating to the Rule 16 discovery. *Id.* March 3, 1997 was established as the date that the defendants would designate reciprocal discovery. *Id.*

In late September of 1996 Hurricane Hortense hit Puerto Rico, resulting in delays in document production. *See, e.g.,* Ariel Gutiérrez' Informative Motion Regarding Status of Discovery, (Docket No. 91, at 2).

On February 28, 1997, Gutiérrez requested that the government be ordered to serve its examiners' reports on all defendants by no later than March 30, 1997. (Docket No. 104). Also on February 28, 1997, Gutiérrez advised the court that he would not be prepared to file substantive motions until at least July of 1997. (Docket No. 105). Also on that day Gutiérrez informed the court that he could not fore-

see being ready for trial until at least 1998. *Id.* At that point, clearly Gutiérrez and the other defendants anticipated a trial no earlier than the beginning of 1998. Furthermore, as of February 28, 1997, Gutiérrez and the other defendants had yet to raise any objections with respect to the relative speed of the proceedings.

On March 5, 1997, the first superceding indictment was issued. (Docket No. 109). Pursuant to the first superceding indictment Rafael Domínguez Wolff and Enrique Gutiérrez Rodríguez were added as defendants. *Id.*

As a consequence the status conference, originally scheduled for May 7, 1997, was rescheduled by the court for May 14, 1997. (Docket No. 146). Due to conflicts with the defendants' attorneys, and at their request, this status conference was rescheduled for June 20, 1997. *See* (Docket Nos. 148, 149 and 153).

The second superceding indictment, which added a count of criminal forfeiture 18 U.S.C. § 982 against all defendants, was issued on May 13, 1997. (Docket No. 151). On May 14, 1997, the government requested the issuance of a cautionary registration notice informing defendants that certain property was subject to forfeiture. (Docket No. 157). On May 23, 1997, the Gutiérrez Defendants filed a motion requesting a fifteen day extension of time to oppose the government's petition for a writ of entry. (Docket No. 173). The extension was granted and the government timely filed an opposition. (Docket No. 192). On July 14, 1996, the Gutiérrez Defendants requested leave to file a reply to the government's opposition. (Docket No. 196).

In the midst of the dispute over cautionary notices and forfeitures, the Gutiérrez Defendants filed a seventy page omnibus discovery motion on June 10, 1997. (Docket No. 184). In this omnibus motion the Gutiérrez Defendants raised the issue of prejudicial pre-trial[4] delay for the first time, requesting a dismissal of the indictment. *Id.* at 36–42. The portion of the omnibus motion seeking dismissal due to prejudicial delay was denied by then Chief Judge Carmen C. Cerezo on November 6, 1997. (Docket No. 239). Ironically, in the same motion, the Gutiérrez Defendants requested permission to file still further supplemental (and time consuming) motions prior to trial, as they deemed warranted. *Id.* at 68. And after receiving an opposition to their omnibus motion, the Gutiérrez Defendants deemed it necessary to file a motion for leave to reply to the government's opposition. (Docket No. 206).

On July 28, 1997, a status conference was held before United States Magistrate Judge Aida Delgado Colón. (Docket No. 202). On that date the parties were given fifteen working days in which to file any further pre-trial discovery motions. *Id.* On August 6, 1997, co-defendant Lorenzo Muñoz Franco filed a motion requesting an extension of that deadline until August 27, 1997 predicated on the voluminous nature of the documentary evidence in this case. (Docket No. 205). On August 27, 1997, Muñoz Franco submitted a document entitled "Pretrial Motions." (Docket No. 209). The document constituted *de facto* seventeen separate motions—all of which necessitated careful judicial attention by the assigned judge, Carmen C. Cerezo. The last of these seventeen motions was a motion entitled "Motion Requesting Order Concerning Additional Motions." *Id.* Essentially Muñoz Franco sought the reservation of the right "to file additional motions as required by future developments in the case." *Id.*

---

4. As discussed by the magistrate in his report and recommendation, the issue at this point was really one of pre-indictment delay as the Gutiérrez Defendants essentially argued that the government was remiss in not indicting them sooner. *See* Magistrate's Report and Recommendation on Prejudicial Pre–Accusation / Pre–Trial Delay, (Docket No. 507, at 3–10). Enrique Gutiérrez asserts that the government's dereliction is particularly egregious in his instance for he had only been a named defendant at this point for three months.

On November 7, 1997, the Gutiérrez Defendants filed an urgent motion requesting a status conference before the holidays. (Docket No. 240). In that motion the Gutiérrez Defendants recognized that many discovery disputes still existed in the case. *Id.* Additionally, the Gutiérrez Defendants' counsel stated that they were, at the time, "trying to accommodate numerous other court commitments"—an acknowledgment of responsibility for a portion of the delay. *Id.* In any event, a status conference was not held until February 13, 1998. *See* (Docket No. 240, Margin Order Mooting Urgent Motion). On December 17, 1997, the court ruled on a number of motions; one of which was defendants' request for *Kyles* and *Brady* information. (Docket No. 248). The government was ordered to produce certain, specific information and was granted forty days by the court to comply with the order. *Id.* On January 26, 1998, the Gutiérrez Defendants filed a third supplemental motion pursuant to FED. R. CRIM. P. 16. (Docket No. 253). In that motion the defendants identified numerous documents which they alleged the government was required to produce and had failed to deliver. *Id.* Also in that motion, the Gutiérrez Defendants requested additional *Brady* materials. *Id.*

Furthermore, on January 26, 1998, the Gutiérrez Defendants filed a motion for limited disclosure of grand jury transcripts and an incorporated memorandum of law. (Docket No. 254). As in other previous motions, this one was well-reasoned and well-researched; and required time to resolve.

On February 3, 1998, Judge Cerezo set a status conference for February 13, 1998. (Docket No. 255). On February 9, 1998, counsel for the Gutiérrez Defendants moved the court to reschedule the status conference for February 11, 1998, so that attorney Michael Pasano could attend. (Docket No. 256). The status conference was held on February 13th and the Gutiérrez Defendants' counsel participated via phone.

Finally, on February 23, 1998, all parties agreed upon a May 26, 1998 trial date. (Docket No. 270). On March 6, 1998, the government issued its third superceding indictment, which added an additional conspiracy count 18 U.S.C. § 371 against co-defendants, Lorenzo Muñoz Franco and Francisco Sanchez Aran. (Docket No. 274).

On March 24, 1998, the Gutiérrez Defendants filed ten separate and distinct motions of varying complexity. The first motion sought the dismissal of counts 3 and 21 of the indictment based on the government's alleged failure to timely charge those offenses. (Docket No. 298). Also on March 24, 1998, the Gutiérrez Defendants filed a motion to dismiss the indictment because acting United States Attorney for the District of Puerto Rico, Guillermo Gil, "was not duly qualified to authorize the indictments because he had not been confirmed by the [United States] Senate." (Docket No. 300, at 2). (Subsequently, the Court notes, this issue has been laid to rest by the First Circuit. *See United States v. Hilario*, 218 F.3d 19 (1st Cir.2000) ("Concluding that the interim United States Attorney [Guillermo Gil] holds his office lawfully, we reverse." *Id.* at 21.)). Additionally, the Gutiérrez Defendants filed a motion seeking the dismissal of the forfeiture count of the indictment as a violation of the *ex post facto* clause of the United States Constitution. (Docket No. 301). The deluge of motions continued with a motion for a limited bill of particulars. (Docket No. 303). Still on the same day the Gutiérrez Defendants filed a motion *in limine* to exclude evidence of alleged civil violations from the criminal trial. (Docket No. 304). The Gutiérrez Defendants further moved the court to sever their trial from that of their co-defendants. (Docket No. 305). Yet further, they renewed an earlier motion for limited disclosure of grand jury information and petitioned for an order striking allegedly prejudicial surplusage. (Docket Nos. 306 and 307). The Gutiérrez Defendants renewed their earlier motion

for dismissal of the counts against them because of allegedly prejudicial pre-trial delay. (Docket No. 302). The government had until April 4, 1998 to reply to this flood of pre-trial motions. Thus, for the trial to begin as scheduled the court had less than six weeks to decide these ten motions.

Still planning to hold the trial as scheduled, the court on April 24, 1998 advised the parties that it would no longer entertain pre-trial motions, with the exception being those motions which dealt with evidentiary disputes. (Docket No. 336). Nevertheless, on April 29, 1998, co-defendant Lorenzo Muñoz Franco filed a motion seeking leave to file still further pre-trial motions; specifically, a motion to dismiss the third superceding indictment for violations of the *ex post facto* and due process clauses of the United States Constitution and a motion to dismiss counts 1 through 21 of the same indictment pursuant to FED. R. CRIM. P. 12(b). (Docket No. 341). The motion seeking leave was, at that time, denied. (Docket No. 343). Notwithstanding, on May 8, 1998, Muñoz Franco petitioned the court to reconsider its denial of leave. (Docket No. 348).

On May 20, 1998, the government requested the recusal of then Chief Judge Carmen C. Cerezo from this case. (Docket No. 356). Consequently, on May 22, 1998, the trial date was vacated in order to allow the court the time necessary to properly consider the recusal motion. (Docket No. 366). From June 2 to June 4, 1998, hearings on the recusal issue were held. (Docket Nos. 387, 390, 391, 398–400). After Judge Cerezo ordered hearings on the recusal motion the government petitioned the First Circuit Court of Appeals for a writ of mandamus requiring recusal. (Docket No. 390). On June 19, 1998, Judge Cerezo denied the motion for recusal and reset the case for trial beginning on July 27, 1998. (Docket No. 406).

On July 13, 1998, the Gutiérrez defendants filed a motion for dismissal premised on alleged prosecutorial misconduct stemming from the motion for recusal. (Docket No. 424). In conjunction with that motion, the Gutiérrez defendants also petitioned the court for fees and costs. (Docket No. 425).

The court of appeals intervened on July 16, 1998 and ordered a hearing on the petition for writ of mandamus to be held on July 27, 1998. (Docket No. 436). The start of the trial, was therefore, ordered stayed for one more week. *Id.* On July 27, 1998, the court of appeals informed the district court and the parties that the petition for a writ of mandamus was under consideration and ordered that the impanelment of a jury in this case should not begin until at least fifteen days after the mandamus opinion had been released. (Docket No. 448). On July 30, 1998, co-defendant Sánchez Arán requested that the trial start no earlier than September 30, 1998. (Docket No. 441). On October 13, 1998, a split panel of the First Circuit Court of Appeals denied the petition for a writ of mandamus. (Docket No. 462); *see In re United States (Muñoz Franco),* 158 F.3d 26 (1st Cir.1998). On October 14, 1998, citing the likelihood of a government appeal of the First Circuit's order, as well as the fact that there were at the time forty-two motions pending which had been filed after the original motion for recusal, then Chief Judge Cerezo voluntarily recused herself from this case "in order to guarantee a speedy and fair trial to both sides." (Docket No. 464). On that same day this case was reassigned to the undersigned judge.[5]

The Court pauses momentarily to recite instructive words of wisdom of the Supreme Court.

> "Given the important public interests in appellate review, . . . , it hardly need be said that an interlocutory appeal by the Government ordinarily is a valid reason

---

5. Since then, 260 additional docket entries have been filed. Defendants are responsible

for generating the majority of the docket entries.

that justifies delay. In assessing the purpose and reasonableness of such an appeal, courts may consider several factors. These include the strength of the Government's position on the appealed issue, the importance of the issue in the posture of the case, and—in some cases—the seriousness of the crime. For example, a delay resulting from an appeal would weigh heavily against the Government if the issue were clearly tangential or frivolous. Moreover, the charged offense usually must be sufficiently serious to justify restraints that may be imposed on the defendant pending the outcome of the appeal.

Under *Barker*, delays in bringing the case to trial caused by the Government's interlocutory appeal may be weighed in determining whether a defendant has suffered a violation of his rights to a speedy trial. It is clear in this case, however, that respondents have failed to show a reason for according these delays any effective weight towards their speedy trial claims. There is no showing of bad faith or dilatory purpose on the Government's part. The Government's position in each of the appeals was strong, and the reversals by the Court of Appeals are prima facie evidence of the reasonableness of the Government's action. Moreover, despite the seriousness of the charged offenses, the District Court chose not to subject respondents to any actual restraints pending the outcome of the appeals."

*United States v. Loud Hawk*, 474 U.S. 302, 315–316, 106 S.Ct. 648, 656, 88 L.Ed.2d 640 (1986).

■ First, the Government's position in the writ of mandamus was not temerarious of bad faith or purely dilatory in nature as evidenced by the eventual outcome of the split panel. *See id.; see also In re United States (Muñoz Franco)*, 158 F.3d at 26. Second, the importance of the recusal issue was paramount and had to be raised before trial commenced. Next, the Defendants suffered no actual restraints pending

the outcome of the writ. Thus, for the delays to be counted against the prosecution the Defendants must make a showing of bad faith or dilatory purpose on the Government's part for initiating the writ of mandamus. *See United States v. Loud Hawk*, 474 U.S. at 316, 106 S.Ct. at 656. The Court has previously addressed this precise issue and found that the proffered showing by the Defendants of the Government's bad faith and dilatory purpose wanting. *See* (Docket No. 588). Thus, after assessing the factors as elucidated by *Loud Hawk*, the Court holds that the "interlocutory appeal by the Government [in this case] is a valid reason that justifies delay." *United States v. Loud Hawk*, 474 U.S. at 315, 106 S.Ct. at 656.

■ Hurricane George struck Puerto Rico on September 21, 1998 and disrupted judicial proceedings well into October. Indeed, the hurricane caused such disruption on the island that the period from September 18, 1998 to October 2, 1998, was declared excludable for purposes of the Speedy Trial Act by court order of the District Court Judges, notified to the public on September 28, 1998. *See* Notice to Counsel and the Public No. 98–30.

On November 16, 1998, the Gutiérrez defendants filed their third motion seeking a dismissal of the indictment for prejudicial pre-trial delay. (Docket No. 472). On December 3, 1998, the government responded to this motion. (Docket No. 476). At a status conference on December 16, 1998, the case was set for trial on May 10, 1999. (Docket No. 482A). On January 19, 1999, Magistrate Justo Arenas issued a report recommending the denial of the Gutiérrez Defendants' motion to dismiss. (Docket No. 507). On February 8, 1999, the Gutiérrez Defendants timely lodged their objections to the magistrate's report. (Docket No. 528). Thereafter, at a further status conference held on March 12, 1999, at the request of all defendants, except the

Gutiérrez Defendants,[6] the trial date was reset to October 5, 1999. (Docket No. 561). Subsequently, on June 10, 1999, the Gutiérrez Defendants filed an informative motion pointing out their pending motion and reasserting their opposition to the re-setting of the trial. (Docket No. 569).

The Court's Opinion and Order affirming the MRR and denying the defendants motion for pretrial delay was issued on August 5, 1999. (Docket No. 579). The reconsideration that followed explicitly contends that defendants, contrary to the Court's decision, are substantially prejudiced by the pretrial delay by the passing away of witnesses, passage of time, and the loss of crucial documents. (Docket No. 580). Meanwhile at a status conference on August 20, 1999, due to unavailability of defense attorneys for the October 5, 1999 trial setting, the trial was reset (over objection by counsel for the Gutierrez Defendants) for November 1, 1999. (Docket No. 582). Thereafter, on August 27, 1999, the Court ordered the Gutiérrez Defendants

> "**by September 13, 1999,** to provide a current listing of all of the alleged witnesses that have been rendered unavailable by the pretrial delay, the reason for the witnesses' unavailability, and a proffer of testimony and/or evidence each respective witness would have provided. The United States is given **until September 24, 1999,** to respond to the Reconsideration and the movant's proffer."

(Docket No. 587). The Gutiérrez Defendants timely complied. (Docket No. 590). By September 29, 1999, the Gutiérrez Defendants notified the Court of the government's noncompliance. (Docket No. 593). The United States responded the next day stating that it has previously responded to this precise issue on four separate occasions and stands on said responses. (Docket No. 595). A hearing limited to this issue was set for October 26, 1999 for the parties to present evidence and testimony. (Docket No. 597).

However, prior to the scheduled pretrial delay hearing the Gutiérrez Defendants renewed their motion to dismiss for violation of the separation of powers doctrine and appointment's clause; twice. (Docket Nos. 599 & 613); *see also* (Docket No. 621). Also in the interim, at the request of attorneys Pasano (attorney for Gutiérrez Defendants) and Castillo, the Court held a further status conference and due to conflicts with defense counsels trial scheduled re-scheduled trial for November 15, 1999. The pretrial delay hearing was reset for November 1, 1999, (Docket No. 603) and then, November 8, 1999. (Docket No. 604).

In preparation for the hearing, Muñoz submitted a list of unavailable witnesses and documentary evidence (Docket No. 612), which Sánchez joined. (Docket No. 614). Muñoz, on November 4, 1999, requested this Court to stay the proceedings pending the outcome of his pending appeal, (Docket No. 615); *see also* (Docket No. 591) and Sánchez joined. (Docket No. 618); *see also* (Docket No. 592). The Gutiérrez Defendants filed on November 5, 1999 exhibits in connection with the evidentiary hearing. (Docket No. 616).

On November 8 1999, the Court held the first day of the evidentiary hearing on the issue of violation of the right to a speedy trial. (Docket No. 619). That day, the Court instructed defendants to state the specific date of death of prospective witnesses, the testimony that was lost due to their passing, and why no other testimony could not replace or supplement the testimony lost. (Docket No. 619). The evidentiary hearing continued for two more days: November 9 & 12, 1999. (Docket Nos. 620 & 628). On the last day of the evidentiary

---

**6.** In pertinent part the minutes of the March 12, 1999, further status conference state that the "[t]rial is presently scheduled for May 10, 1999. All defendants except Passano [Gutiérrez Defendants] request a continuance of the trial date. Passano announces he will appeal the Motion on Speedy Trial delay if same is denied. **Trial is re-set for October 5, 1999.**" (Docket No. 561).

hearing, in addition to the trial being re-scheduled (January 7, 2000), the following deadlines among others were imposed Defendant's post-hearing brief (December 3, 1999),[7] the Government's brief (December 10, 1999),[8] and another evidentiary hearing was set for December 1, 1999 for the separation of powers issue. (Docket No. 628).

The evidentiary hearing on the separation was re-set for January 4, 2000. (Docket No. 642). Subsequently, the hearing was vacated and replaced by a final trial scheduling conference for the same time and date. (Docket No. 655).

On January 4, 2000, the Court due to conflicts with defense counsels schedules and disruption of other criminal proceedings in sister Courts in the district, the case was "scheduled for jury selection on August 28, 2000 and for commencement of jury trial on September 4, 2000." (Docket No. 658); *see also* (Docket No. 662). "No objection was made by any defendant." *Id.* Two further matters require resolution prior to trial; the viability of the Government's assertion of attorney privilege to resist disclosure of documents discoverable under Jencks, and false statements and information presented to the grand jury. (Docket Nos. 688, 700, 701, 702, 704, 711, 715, 716, 717, 719, 721 & 723). Defense counsel and the prosecution has been duly forewarned that trial will immediately follow the resolution of these two matters. (Docket No. 721).

▉▉▉ The Court recalls that it is not the length but rather the reasons for the delay that constitute the "focal inquiry" of a Sixth Amendment analysis under *Barker v. Wingo. See United States v. Muñoz–*

*Amado,* 182 F.3d at 62; *United States v. Santiago–Becerril,* 130 F.3d at 22 (citation omitted). As a general rule, government misconduct or negligence is required in order to mandate dismissal due to delay. *See United States v. Santiago–Becerril,* 130 F.3d at 22. In this case, although the Gutiérrez Defendants have raised the specter of the government misconduct, the record is devoid of evidence to support such allegation. Albeit the government's motion for recusal and the subsequent petition for a writ of mandamus were denied, there is no evidence to indicate that the recusal motion was filed in bad faith or with dilatory intent. Furthermore, as the above review of the record indicates, the onus for the delay is primarily attributable to the defendants, specifically the Gutiérrez Defendants. Just as the court finds no evidence of bad faith on the part of the government, the court also finds no evidence of bad faith in any of the myriad motions filed by the defendants in this case. Although many of the defendants motions have been denied, none have been found to be patently frivolous.

The docket in this case currently consists of over 720 entries—many of which are defense motions. The defendants cannot have their cake and eat it too. Well-reasoned motions take time to decide. As the court gives careful attention to each matter raised by the defendants, the very same defendants may not now cry foul that the case is taking too long. A careful review of the record does not reveal any undue delays. Each motion has been addressed as promptly as possible and the trial schedule has repeatedly been read-

---

7. The Gutiérrez Defendants filed their post-hearing brief on December 3, 1999. (Docket No. 643); *see also* (Docket No. 638, 625 & 616). Muñoz requested a short extension (Docket No. 644); *see also* (Docket No. 647), and then tendered his motion. (Docket No. 645). The Gutiérrez Defendants also tendered a reply brief (Docket No. 676), which the Court hereby GRANTS and authorizes Sánchez' joining. (Docket No. 678).

8. After the Government requested extensions (Docket Nos. 646, 650, 657), the Court granted the Government until the first week in March 2000 to respond. (Docket Nos. 648, 662). The Court holds that the Government's response was timely although filed on March 22, 2000. (Docket No. 670); *see also* (Docket No. 666). The Government's motion to strike the Gutiérrez Defendants' reply brief, however, is **DENIED.** (Docket No. 677); *see also* (Docket No. 681).

justed accordingly. Wherefore, the Court holds the delays are considered neutral or valid under *Barker v. Wingo,* 407 U.S. at 531, 92 S.Ct. 2182. *See United States v. Caraballo,* 47 F.Supp.2d 190, 194 (D.P.R. 1999); *United States v. Enriquez,* 35 F.Supp.2d 176, 180 (D.P.R.1999).

**FACTOR THREE: DEFENDANTS' ASSERTION OF THEIR RIGHT**

In light of the above discussion, the Court holds that the defendants have timely and repetitively asserted their rights to a speedy trial, even though the first motion of this nature was filed on June 10, 1997. (Docket No. 184). The strength of this factor shall be explored in the balancing test to follow.

**FACTOR FOUR: PREJUDICE TO THE DEFENDANTS**

■ "A fourth factor is prejudice to the defendant. Prejudice, of course, should be assessed in the light of the interests of defendants which the speedy trial right was designed to protect. This Court has identified three such interests: (i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired. Of these, the most serious is the last, because the inability of a defendant adequately to prepare his case skews the fairness of the entire system. If witnesses die or disappear during a delay, the prejudice is obvious. There is also prejudice if defense witnesses are unable to recall accurately events of the distant past. Loss of memory, however, is not always reflected in the record because what has been forgotten can rarely be shown."

*Barker v. Wingo,* 407 U.S. at 532, 92 S.Ct. at 2193; *see United States v. Muñoz-Amado,* 182 F.3d at 62–63; *United States v. Santiago-Becerril,* 130 F.3d at 22–23. As for the first interest, the defendants in this case have not been incarcerated. Moreover, they are subject to "the least restrictive conditions of release" imaginable. Furthermore, with respect to anxi-

ety of the accused, the second interest, a review of the record reveals nothing which should give rise to a level of anxiety in the defendants which is not commensurate with being accused of criminal activity. "[C]onsiderable anxiety normally attends the initiation and pendency of criminal charges; hence only 'undue pressures' are considered." *United States v. Santiago-Becerril,* 130 F.3d at 23 (quoting *United States v. Henson,* 945 F.2d 430, 438 (1st Cir.1991)). Surely, defendants in general are in a state of anxiety and there is nothing in the record that indicates said level in the case rises to the level of "undue pressure." *See id.; but see Barker v. Wingo,* 407 U.S. at 533, 92 S.Ct. at 2193 ("[E]ven if an accused is not incarcerated prior to trial, he is still disadvantaged by restraints on his liberty and by living under a cloud of anxiety, suspicion, and often hostility.").

■ The Court now embarks on the examination of the "most serious" interest, that is, the alleged impairment of the defense manifested in the unavailability of witnesses and documents caused by the delay. *See Barker v. Wingo,* 407 U.S. at 532, 92 S.Ct. at 2193. The rationale undergirding this is

"the inability of a defendant adequately to prepare his case skews the fairness of the entire system. If witnesses die or disappear during a delay, the prejudice is obvious. There is also prejudice if defense witnesses are unable to recall accurately events of the distant past. Loss of memory, however, is not always reflected in the record because what has been forgotten can rarely be shown."

*Id.* "The impairment nevertheless must be serious enough to amount to a constitutional deprivation." *United States v. Henson,* 945 F.2d at 438 (citations omitted). The Defense must offer evidence that the unavailable witnesses' testimony is material and favorable for the defense to be prejudicial. *See e.g. United States v. Valenzuela-Bernal,* 458 U.S. 858, 102 S.Ct. 3440, 73

L.Ed.2d 1193 (1982) (Sixth amendment right of confrontation case.). Before going on to the unavailability of witnesses and the prejudicial loss of witnesses' memories, the Court addresses the issue of prejudice caused by missing documents.

### a. Missing Documents

 The defendants have compiled a list of documents they allege are missing.[9] The Government counters that although the records of Valuation Counselors were destroyed in 1990 or 1991, as well as the Laventhol and Horwath records, the defendants requested and received numerous documents, among others, from the Modules inventory.[10] In a nutshell, the Defendants have not shown that the missing documents can in any way be attributed to the pretrial delay. (Docket No. 641, p. 68). Second, the record is devoid of any indication when the documents disap-

peared, became unavailable, or were lost. (Docket No. 629, p. 38). Incomplete records are not the rarest occurrence in criminal trials. Here, the prejudice calculation is for the time-frame following indictment. *See Barker v. Wingo*, 407 U.S. at 532, 92 S.Ct. at 2193. Prejudice does not inure simply by documents being unobtainable.

### b. Unavailability of Witnesses

 The Court begins the process of separating the wheat from the chaff with the Defendants list of fifteen (15) potential witnesses whose testimony has been rendered unavailable due to the pretrial delay.[11] Only witnesses made unavailable "during a delay" are considered to determine prejudice to the defense. Hence, potential witnesses made unavailable prior to indictment are culled from the analy-

---

9. Defendants' list of missing documents.

1. Complete set of Modules documents, records, and checks.
2. Valuation Counselors' appraisal of the Modules patents.
3. Audited financial statements and all other financial records of Modules.
4. Audited financial statements and all other financial records of Transglobe.
5. Audited financial statements and all other financial records of SCI.
6. Audited financial statements and all other financial records of Cerchas Metalicas.

(Docket No. 616, Exh. A); *see also* (Docket No. 590).

10. Government's list of documents provided to Defendants' upon request.

1. Dr. Francisco Sanchez—Patent
2. Laventhol and Horwath Tax Form 25—1986
3. Laventhol and Horwath Tax Form 480.20—1985
4. Modules Financial Statement 1985 and 1986
5. Transhore Financial Statement 12/31/85
6. Transhore Balance Sheet 12/31/86
7. Transhore Parent Co. Financial Statement 12/31/85–
8. Modules Man. Co. Financial Statement 12/31/85
9. Modules Man. Co. Financial Statement 12/31/84
10. Modules Man. Co. Financial Statement 4/30/84

11. Laventhol and Horwath Manila File 2/21/86
(Docket No. 670).

11. The defendants proffered a list of fifteen (15) potential witnesses whose testimony has been rendered unavailable due to the passage of time:

1. Raphael Domínguez Wolff (Died on 9/23/98)
2. Gilberto Mayo Aguayo (Died on 11/25/97)
3. Nelson Soto Velazquez (Died on 1/11/96)
4. Hugo Lopez (Died on 5/22/95)
5. Celestino Seneriz (Died on 8/19/92)
6. Pedro Brull Nater (Died on 7/14/92)
7. Gilberto Pol Segarra (Died on 8/1/96)
8. Luis Acevedo Gonzalez (Died on 1/22/96)
9. Francisco Susoni Lens (Died on 6/18/92)
10. Jaime Sitiriche (Very ill)
11. Juan E. Hernandez (Died on 8/6/97)
12. Jose M. Feliciano (Died in 1991)
13. Stanley Orenstein (Very ill)
14. Stephen P. Radics, Sr. (Died on 10/8/96)
15. Fernando Rivera (Very ill)

(Docket No. 638, Exh. O); *see also* (Docket No. 616, Exh. A; 590). Additionally, Muñoz proffered a list of twenty five (25) potential witnesses. (Docket No. 612). However, Muñoz failed to heed the Court's instructions to indicate and provide verifying evidence of when the enumerated witnesses became unavailable. Muñoz' roster is therefore excluded from the Court's analysis. The descriptions accompanying each potential witness has been considered on an ad hoc basis.

sis.[12] The appropriately pruned list is reduced to the following ten:

1. Raphael Domínguez Wolff (Died on 9/23/98)

2. Gilberto Mayo Aguayo (Died on 11/25/97)

3. Nelson Soto Velazquez (Died on 1/11/96)

4. Gilberto Pol Segarra (Died on 8/1/96)

5. Luis Acevedo Gonzalez (Died on 1/22/96)

6. Jaime Sitiriche (Very ill)

7. Juan E. Hernandez (Died on 8/6/97)

8. Stanley Orenstein (Very ill)

9. Stephen P. Radics, Sr. (Died on 10/8/96)

10. Fernando Rivera (Very ill)

(Docket No. 638, Exh. O); *see also* (Docket No. 616, Exh. A; 590).

■ Of these top ten (10) unavailable witnesses, Defendants argue that the loss of witnesses 4) Gilberto Pol Segarra, 5) Luis Acevedo Gonzalez 6) Jaime Sitiriche

and 7) Juan E. Hernandez as members of the board of directors of Caguas prejudice the defense. A number of directors who served during the period of the alleged conspiracy are available to be interviewed and testify regarding Caguas to the same extent as the deceased directors.[13] The defendants did not depose the unavailable directors. *See Look v. Amaral*, 725 F.2d 4, 7 (1st Cir.1984) ("[I]f she had in fact been considered a crucial witness, Look could have made some effort to keep track of her and possibly take her deposition."). Accordingly, the Court's inquiry narrows further.

■ Potential witnesses 8) Stanley Orenstein and 10) Fernando Rivera are allegedly very ill and unable to testify. However, no evidence is presented to verify their inability to appear at trial or be deposed. Moreover, the record contains no evidence that the substance of their prospective testimony is material or that they would testify favorably for the defense. *See United States v. Muñoz–Amado*, 182 F.3d at 63 (No prejudice was found because defen-

12. Thus, the Court excludes the evidence proffered by Defendants on the second day of the pre-trial delay hearing, November 9, 2000, through Mr. Mark D. Seltzer's testimony on the impact that precipitates for the unavailability of two witnesses that predeceased the initial indictment; Jose M. Feliciano (Died in 1991) and Francisco Susoni Lens (Died on 6/18/92). (Docket No. 641, pp. 132–136, 172–173, 181–184); (Docket No. 638, Exh. O). Moreover, a substantial portion of Mr. Seltzer's testimony was focused on what the Court considers to be legal conclusions which invade the province of the Court and thus, is hereby **STRICKEN**. *See Nieves–Villanueva v. Soto–Rivera*, 133 F.3d 92, 99–101 (1st Cir.1997); *Askanase v. Fatjo*, 130 F.3d 657, 673 (5th Cir.1997); *North Am. Specialty Ins. Co. v. Myers*, 111 F.3d 1273, 1280–81 (6th Cir.1997); *Specht v. Jensen*, 853 F.2d 805, 807 (10th Cir.1988); *United States v. Zipkin*, 729 F.2d 384, 387 (6th Cir.1984); *Marx Co. v. Diners' Club, Inc.*, 550 F.2d 505, 512 (2d Cir.), *cert. denied*, 434 U.S. 861, 98 S.Ct. 188, 54 L.Ed.2d 134 (1977).

Furthermore, Demetrio Sains Soler testified as to the unavailable witness Hugo Lopez (Died on 5/22/95), the comptroller and head of the accounting department for over 20 years for the Gutierrez brothers. Mr. Lopez

was the person responsible for the financial aspects of the Gutierrez brothers' business. (Docket No. 629, pp. 23–25). However, the accounting department had several employees, such as Jorge Fábregas Modules' accountant/bookkeeper who worked under Mr. Lopez for 6 to 7 years. *Id.* at pp. 24–25. Other employees in the accounting department include Maritza Rosado, Boris Lodedo, and Carlos Rodriguez. *Id.* at p. 29. Mr. Sains Soler testified that Mr.Lopez delegated many of his accounting responsibilities to others within the department. The defendants have not established that these persons are also unavailable.

13. Former directors available to be interviewed by the defense:

| | Name | Tenure as Director |
|---|---|---|
| 1. | Rafael Toro Nazario | 1982—1990 |
| 2. | Jaime Sepulveda | 1986—1990 |
| 3. | Jose Mendoza | 1980—1988 |
| 4. | Ramón Lugo Beauchamp | 1971—1990 |
| 5. | Roberto Lugo Rigau | 1982—1990 |
| 6. | Leonardo Nightingale | 1989—1990 |
| 7. | Lorenzo Muñoz Franco | 1979—1990 |

(Docket No. 670, p. 14).

dant did not delineate, *inter alia*, "the substance of the testimony that these alleged witnesses would have provided." *Id.*). No deposition testimony has been proffered. *See Look v. Amaral*, 725 F.2d at 7. The Court may not simply rubber-stamp Defendants' naked allegations.

Likewise, no evidence exists on the record as to the substance of unavailable witnesses 1) Raphael Domínguez Wolff,[14] 3) Nelson Soto Velazquez, and 9) Stephen P. Radics, Sr. testimony. *See United States v. Muñoz–Amado*, 182 F.3d at 63. And again, no deposition testimony is on file for the Court's consideration. *See Look v. Amaral*, 725 F.2d at 7. And the Court does not assume that said witnesses would favorably testify for the defense.

■ Demetrio Sains Soler ("Sains Soler"), a member of the Gutierrez brothers' legal department for more than 31 years (Docket No. 629, p. 20), testified as to the unavailable witness 2) Gilberto Mayo Aguayo ("Mayo Aguayo") who was also an attorney for the Gutierrez brothers and specifically their attorney in 1985 and 1986 when the Modules Manufacturing sales transpired. (Docket No. 629, pp. 20–22). Mr. Mayo Aguayo was the primary contact and drafted the documents for the sales of Modules to Sergio Camero in 1985 and then to Enrique "Kiki" Santiago ("Santiago") in 1986. *Id.* at p. 21–22.

Defendants understandably state that they require the testimony of people familiar with the Modules transactions to attest to the legitimacy of the sale and closing of Modules and its related entities to Santiago in 1986, which the Government has alleged was a sham. The Court agrees that according to Sains Soler's testimony Mayo Aguayo was intimately familiar with the Modules transfers. Notwithstanding, nothing in the record even hints that Mayo Aguayo's prospective testimony would have been favorable to Defendants. For instance, the record is devoid of one speck of evidence that would suggest Mayo Aguayo would contradict Santiago's assessment of the Modules transfers or Santiago's possible claims of ignorance or concealment. Nor is there a stitch of evidence that Mayo Aguayo would have defended the viability of the Modules business and the good faith and honesty of the Gutierrez Defendants or, that the negotiations were arms-length commercial transactions and not a sham.

Defendants failed to depose this alleged crucial witness Mayo Aguayo even though he did not pass away until November 25, 1997, two years after the initial indictment. *See Look v. Amaral*, 725 F.2d at 7. Mr. Sains Soler readily states that he was also involved in the Modules transfers and is in a position to provide the same information of the details of these transactions as Mr. Mayo Aguayo. *Id.* at p. 22. Additionally, Sians Soler testified that he was unaware of who else had assisted Mr. Mayo in this transaction. *Id.* at p. 26. Defendants do not assert that Sergio Camero and Enrique "Kiki" Santiago are unavailable to testify.

The threshing process complete, the Court recapitulates. First, the witnesses must be made unavailable within the period of delay between the time when Defendants became accused and the trial. *See Barker v. Wingo*, 407 U.S. at 532, 92 S.Ct. at 2193. Next, according to the record, none of the unavailable witnesses have been deposed nor have their testimony been perpetuated. *See Look v. Amaral*, 725 F.2d at 7. In fact, only for the unavailable witness Mayo Aguayo has the substance of testimony been supplied. *See United States v. Muñoz–Amado*, 182 F.3d at 63. Thus, the Court is deprived of reaching a determining of whether the un-

---

14. Mr. Dominguez Wolff was a co-defendant and therefore, he had a Fifth Amendment right to remain silent, and he could not have been compelled to testify by any of his co-defendants. Mr. Wolff succumbed to cancer in September 1998, nearly three years after the initial indictment in this case and when the case was under the First Circuit's advisement. *See In re United States (Muñoz Franco)*, 158 F.3d at 26.

available witnesses, with the exception of Mayo Aguayo, would have provided material evidence. Moreover, the record contains no evidence that any of the proposed unavailable witness would have favorably testified for Defendants.

### c. Loss of Memory

■ The defendants also allege undue prejudice to them as a result of loss or lack of memory of witnesses due to the passage of time. First, memory lapse in a criminal case can be a "two-edged sword." *See United States v. Loud Hawk,* 474 U.S. at 315, 106 S.Ct. at 656. "Generally, the assertion that memories have dimmed with the passage of time cannot establish actual substantial prejudice." *United States v. Marler,* 756 F.2d 206, 214 (1st Cir.1985) (citations omitted); *see United States v. Loud Hawk,* 474 U.S. at 315, 106 S.Ct. at 656 (Possibility·of prejudice is insufficient to support allegation of speedy trial violation.). The Defendants have simply not documented an instance that "witnesses forgot or altered elements of their prior testimony." *Id.* The Court notes that this is chiefly a case established by documents, as the documents in the case reflect the money trail of the misapplications and bank fraud scheme described in the Third Superseding Indictment. Nevertheless, the Court will remain mindful of egregious memory flaws during trial. *See Isaac v. Perrin,* 659 F.2d 279, 284 (1st Cir.1981) (citing *Dufield v. Perrin,* 470 F.Supp. 687, 692 (D.N.H.1979)) (Basic aspects of the alleged crime beyond recollection of prosecution's key witness.).

"*Barker* explicitly recognized that impairment of one's defense is the most difficult form of speedy trial prejudice to prove because time's erosion of exculpatory evidence and testimony 'can rarely be shown.'" *Doggett v. United States,* 505 U.S. at 655, 112 S.Ct. at 2692–93 (quoting *Barker v. Wingo,* 407 U.S. at 532, 92 S.Ct. at 2193). The defendants have not convincingly pointed to a single aspect of their case which has been hindered by the passage of time. As the magistrate concluded, any "impairment to the defense is speculative and there is no showing that there are insurmountable redoubts to be breached to be due to the demise of any particular person, this assuming that such person would actually have been a defense witness, or due to the absence of a particular document or documents." (Docket No. 507, at 14).

## II. BALANCING TEST OF BARKER V. WINGO TEST

The Court engages in a balancing of the four factors which is more akin to "judicial art than science; no calculus exists to tell this court with precision the weights to assign the various factors, nor is it likely that such a calculus could be devised." *Look v. Amaral,* 725 F.2d at 8.

"*Barker v. Wingo* expressly rejected the notion that an affirmative demonstration of prejudice was necessary to prove a denial of the constitutional right to a speedy trial: 'We regard none of the four factors identified above (length or delay, reason for delay, defendant's assertion of his right, and prejudice to the defendant) as either a necessary or sufficient condition to the finding of a deprivation of the right of speedy trial. Rather, they are related factors and must be considered together with such other circumstances as may be relevant. In sum, these factors have no talismanic qualities; courts must still engage in a difficult and sensitive balancing process. But, because we are dealing with a fundamental right of the accused, this process must be carried out with full recognition that the accused's interest in a speedy trial is specifically affirmed in the Constitution.'"

*Moore v. Arizona,* 414 U.S. 25, 26, 94 S.Ct. 188, 189, 38 L.Ed.2d 183 (1973) (quoting *Barker v. Wingo,* 407 U.S. at 533, 92 S.Ct. at 2193).

■ First, the lengths of delay are four years and eight months (Docket No. 2) (November 22, 1995) against defendants,

Lorenzo Muñoz Franco, Francisco Sanchez Aran, Ariel Gutierrez Rodriguez, Wilfredo Umpierre Hernandez, and three years and almost five months (Docket No. 109) (March 5, 1997) against defendant, Enrique Gutierrez Rodriguez. The Court holds that the lengthy delays from indictments to trial, standing alone, are prejudicial to defendants and necessarily weigh against the government. *See Doggett v. United States,* 505 U.S. at 652, 112 S.Ct. at 2691 ("... the Court must then consider, as one factor among several, the extent to which the delay stretches beyond the bare minimum needed to trigger judicial examination of the claim. This latter enquiry is significant to the speedy trial analysis because, ..., the presumption that pretrial delay has prejudiced the accused intensifies over time.") (internal citations omitted); *Barker v. Wingo,* 407 U.S. at 533, 92 S.Ct. at 2193–2194 ("It is clear that the length of delay between arrest and trial-well over five years-was extraordinary."); *United States v. Salimonu,* 182 F.3d at 69 ("two-year delay in proceeding with Salimonu's trial was inordinately lengthy."); *Look v. Amaral,* 725 F.2d 4, 6 (1st Cir. 1984) (Pretrial delay nearly five years.). Nevertheless, the magnitude of prejudice emanating from the length of delay is counterbalanced by the fact that this case involves "serious, complex conspiracy charge[s]," *Barker v. Wingo,* 407 U.S. at 531, 92 S.Ct. at 2192, springing from the largest bank failure in the Commonwealth's history with an estimated one hundred twenty million dollars in losses. *See In re United States (Muñoz Franco),* 158 F.3d at 28. The government had to review the universe of documents, approximately eleven (11) to twelve (12) thousand boxes of documents, to discover what caused the bank to fail. *See* (Docket No. 641, pp. 71, 144); *see also* (Docket No. 640, p. 90). The Court has not found a violation of the Speedy Trial Act in this case. The First Circuit has made clear that "[i]t would be, however, an unusual case in which the time limits of the [STA] have been met but the [S]ixth [A]mendment right to speedy trial has been violated." *United States v. Santiago–Becerril,* 130 F.3d at 21; *see United States v. Salimonu,* 182 F.3d at 69; *United States v. Muñoz–Amado,* 182 F.3d at 61. Thus, the Court holds the length of delay inandofitself, though lengthy, due to the complexity and magnitude of this case was not excessive. *See Barker v. Wingo,* 407 U.S. at 531, 92 S.Ct. at 2192, (MRR—"This multi-defendant case is exceptional in its complexity, in the time it has consumed, and in the comprehensive manner in which the indictment has been challenged.").

Second, just as in *Loud Hawk,* "[t]he flag all litigants seek to capture is the second factor, the reason for delay." *United States v. Loud Hawk,* 474 U.S. at 315, 106 S.Ct. at 656. Employing the weighing process clearly " 'different weights [are to be] assigned to different reasons' for delay." *Doggett v. United States,* 505 U.S. at 657, 112 S.Ct. at 2693 (quoting *Barker v. Wingo,* 407 U.S. at 531, 92 S.Ct. at 2192); *see United States v. Loud Hawk,* 474 U.S. at 315, 106 S.Ct. at 656. "While a 'deliberate attempt to delay the trial in order to hamper the defense,' would be weighed heavily against the Government, a delay from 'overcrowded courts'—as was the situation here—would be weighed 'less heavily.' Ibid." *United States v. Loud Hawk,* 474 U.S. at 315, 106 S.Ct. at 656; *see Doggett v. United States,* 505 U.S. at 657, 112 S.Ct. at 2693. The Defendants, through the sheer volume and magnitude of their motions, have caused the substantial portion of the delay whereof they now complain. Furthermore, after a thorough reexamination of the record the Court remains convinced that the delays in this case are neutral or valid when scrutinized under the *Barker v. Wingo* standard. *See United States v. Caraballo,* 47 F.Supp.2d 190, 194 (D.P.R.1999); *United States v. Enriquez,* 35 F.Supp.2d 176, 180 (D.P.R.1999).

Third, the Defendants assertion of their speedy trial right "is entitled to strong evidentiary weight in determining whether

the defendant[s are] being deprived of the right." *Barker v. Wingo,* 407 U.S. at 531–523, 92 S.Ct. at 2192–2193; *see United States v. Muñoz–Amado,* 182 F.3d at 62; *United States v. Santiago–Becerril,* 130 F.3d at 22. "These assertions, however, must be viewed in the light of [Defendants'] other conduct." *United States v. Loud Hawk,* 474 U.S. at 314, 106 S.Ct. at 655–656. "A defendant should give some indication, prior to his assertion of a speedy trail violation, that he wishes to proceed to trial." *United States v. Muñoz–Amado,* 182 F.3d at 62 (quoting *United States v. Santiago–Becerril,* 130 F.3d at 22). As delineated in the analysis of the reasons for the delay above, the Defendants demonstrate a "lack of enthusiasm for the speedy trial right which [they] now assert[ ]." *United States v. Henson,* 945 F.2d at 438 (internal quotation marks and citation omitted).

Fourth, the Defendants are not incarcerated and not subject to ascertainable undue pressures. *See United States v. Santiago–Becerril,* 130 F.3d at 23. Upon review of the Defendants' assertions of impairment of defense, "[t]here is no indication here that the period of pretrial delay interfered in any way with [the Defendants'] ability to present evidence or obtain the testimony of witnesses, or that it had any impact on the fairness of his trial. Accordingly, this paramount interest in no way favors [Defendants'] claim of constitutional impairment." *United States v. Muñoz–Amado,* 182 F.3d at 63 (internal citation omitted); *see United States v. Santiago–Becerril,* 130 F.3d at 23.

Succinctly, after a careful weighing of the *Barker v. Wingo* factors and other factors results in the inevitable and inescapable conclusion that the Defendants' constitutional right to a speedy trial has not been violated, and thus the pretrial delay does "not justify the severe remedy of dismissing the indictment." *United States v. Loud Hawk,* 474 U.S. at 317, 106 S.Ct. at 657.

## III. CONCLUSION

Wherefore, the defendants' reconsideration of their motions to dismiss the third superceding indictment with prejudice based upon prejudicial pre-trial delay are **DENIED.**

**IT IS SO ORDERED.**